## THE GEORGE W. PEAVEY.

(Circuit Court of Appeals, Second Circuit. December 12, 1910.)

### No. 76.

1. COLLISION (§ 22*)—INEVITABLE ACCIDENT.

A collision is not due to inevitable accident, when it could have been avoided by the exercise of skill and care.

[Ed. Note.—For other cases, see Collision, Cent. Dig. § 19; Dec. Dig. § 22.*]

2. COLLISION (§ 125*)—ACTION FOR DAMAGES—EVIDENCE.

The testimony of persons on a vessel on a dark night as to the speed of a meeting vessel is not entitled to weight as against that of the persons navigating the meeting vessel.

[Ed. Note.—For other cases, see Collision, Cent. Dig. § 270; Dec. Dig. § 125.*]

3. COLLISION (§ 105*)—STEAMER AND TOW MEETING—SHEER OF TOW.

A collision at night in the canal through the St. Clair Flats between a barge in tow passing down and a steamer going up held on the evidence to have been due solely to the sheering of the barge to the east side of the channel and against the steamer, which was without fault.

[Ed. Note.—For other cases, see Collision, Dec. Dig. § 105.*

Collision with or between towing vessels and vessels in tow, see note to The John Englis, 100 C. C. A. 581.]

Appeal from the District Court of the United States for the Western District of New York.

Suit in admiralty by W. S. Brainard, as owner of the schooner barge Chippewa, against the steamer George W. Peavey. Decree for respondent (173 Fed. 715), and libelant appeals. Affirmed.

Harvey D. Goulder and Frank S. Masten, for appellant.

Hermon A. Kelley and Hoyt, Dustin, Kelley, McKeehan & Andrews, for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

*For other cases see same topic &. § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

COXE, Circuit Judge. The ship canal where the collision occurred is approximately a mile and one-third in length and 292 feet wide. The Peavey is a steel steamer 430 feet long, keel measurement, and 50 feet beam. She was bound up without cargo. The Cherokee, towing the barge Chippewa on a 700-foot hawser, was bound down for Cleveland. The steamer and the barge are wooden vessels and were both loaded with iron ore. The Cherokee is 308 feet keel and 35 feet beam. The Chippewa is 220 feet keel and 36 feet beam. The collision occurred at about 10:40 on a calm, clear night when there was no wind and nothing in the elements to render navigation difficult. It was asserted at the argument that the decree of the District Judge exonerating the Peavey was equivalant to a finding that the collision was the result of inevitable accident. A mere statement of the salient facts demonstrates the inaccuracy of this assertion. An accident is not inevitable when it can be avoided by the exercise of skill and care. The Jumna, 149 Fed. 171, 79 C. C. A. 119. We are convinced that this accident could have been avoided. It is not, however, necessary to designate the particular act, or acts, of negligence which caused the collision. The burden is upon the libelant to prove the negligence of the Peavey and unless he succeeds in so doing he cannot recover.

The faults charged against the Peavey are as follows: First, that she was proceeding at an excessive and illegal speed; second, that she failed to have and maintain a sufficient lookout; third, that she was in control of incompetent and reckless officers and crew; fourth, that she failed to navigate in accordance with exchanged signals; fifth, that she failed to keep on the right side of the channel. The charge of excessive speed is based upon speculation and presumption. It is hardly necessary to point out that on a dark night witnesses on meeting vessels are in no position to state with anything approaching accuracy the speed of the other vessel. Whether she is approaching at five or ten miles an hour, is, under such conditions, the merest guesswork. The witnesses on the Cherokee and Chippewa had no accurate criteria with which to gauge the speed of the Peavey. When opposed to their opinion we have the positive statement of those in charge of the Peavey that she was proceeding at a speed not over five miles past the land, we are compelled to the belief that she was well within the legal rule which permits a speed of eight miles an hour through the canal. The Peavey was following the Britannic across Lake St. Clair and through the canal. She was a somewhat faster boat than the Britannic and, in order that she might keep a safe distance behind, she checked to slow speed about a mile and a half before reaching the canal. The proof shows that she entered the canal at about the center and continued in this position until the exchange of port to port signals with the Cherokee, when she ported her helm and was well on the easterly side of the canal when she passed the Cherokee not less than 40 or more than 100 feet away.

When it is remembered that the channel is less than 300 feet wide and that the Peavey is 50 feet beam, it is manifest that the space in which to maneuver east of the center line of the canal was exceedingly limited. Navigation nearer than 50 feet to the east pier would

present many elements of danger and the testimony shows that the starboard side of the Peavey was about this distance from the east pier when she passed the Cherokee and her port side was about 50 feet east of a line drawn through the center of the river. A safer course for passing down-bound vessels could hardly be suggested. To have hugged the east pier would not only have been faulty navigation, but it would have been in direct violation of the statute governing the navigation of the canal. The two steamers passed at a safe distance, even if the testimony of the libelant be accepted, and if the Chippewa had followed her steamer, she would also have passed in safety. As the bow of the Peavey was passing the Cherokee's stern the Chippewa suddenly showed her green light, indicating a strong sheer to port. There was then less than a minute before the collision occurred and whatever took place thereafter may be considered as in extremis. However, there is no doubt that everything was done on both vessels to avert the collision which could have been done after the sheer began. We have no doubt that it was this unexpected sheer of the barge when she was about 700 feet from the Peavey's bow which caused the collision and we are unable to find that this sheer can be attributed to any act of omission or commission on the part of the Peavey. The fact that the force of the blow on her port bow threw the Peavey almost immediately on the east pier indicates that the collision must have occurred well to the eastward of the center of the canal. It is unnecessary to indulge in conjecture as to what caused the sheer. It is enough that it was not caused by the Peavey.

The captain of the Cherokee says that he met the Britannic when he was entering the canal and that the Cherokee was then 30 or 35 feet off the west pier and that the Britannic passed him about 50 feet off. If this be true it is clear that the Britannic must have been either in, or west of, the center of the canal and yet the Cherokee and her tow passed her in perfect safety. If the Cherokee and her tow were 35 feet off the west pier it is difficult to perceive how a collision could have occurred at a point east of the center of the channel unless the barge took a decided sheer to port.

The Peavey had a competent lookout who was on duty at the forecastlehead and saw all that it was possible to see. Indeed, there can be no doubt that the Peavey was properly manned by competent officers and crew. The libelant admits that as the Britannic "passed the Chippewa the latter sheered slightly" and no one disputes that she sheered at this time. We agree with the District Judge in thinking that this sheer was not a slight one and was not overcome, but continued until the Chippewa struck the Peavey in the eastern half of the canal, forcing the bow of the latter upon the eastern pier. Such a condition cannot be accounted for upon the theory that the Chippewa was coming down on the westerly side of the canal and would have passed in safety had not the Peavey, in the language of the libel, come on "at a great and unlawful speed in excess of the government regulations for passing in the canal; that she did not navigate in accordance with signals, but, notwithstanding she had an abundance of room, as above stated, and could have passed with entire safety and without

risk to any of the vessels, she came over into the water of the Chippewa and into the course of the Chippewa and, still running at great speed, struck the Chippewa on the port bow with her own bow and then for the first time sheered over to the westward." Such is not, in our judgment, a rational version of the collision nor is it in accordance with the proof.

The decree is affirmed with costs.